We'll hear the next case, Chen Gang v. Zhao Zhizhen. Thank you, Terry Marsh, on behalf of appellants, may it please the Court, first I'd like to thank you for granting us a chance to argue the case today. You don't have to thank us, this is your Court, you're not a supplicant, you have a right. Yes, I understand that, I was being gracious. Yes, it might be even more gracious if you pulled the microphone down a little bit, just pull it down. Oh, I'm sorry. And that'll make it a little easier. Does that work? I think so, it's fine. Okay, thank you. So I'll be making two arguments today. One, that the Court's determination that the requested amending would be futile is an error, and second, that the delay involved in this case would rise to the level of undue prejudice is an error, and I would ask that the Court reverse and remand. In futility, I take it the, you will correct me if I'm wrong, that aiding and abetting and conspiracy are the two theories here. Yes. And the question is how is the facts as alleged, how do they rise to the level of either aiding and abetting. Yes. Conspiracy. Mind you, I understand what the defendant was saying and the entire Falun Gong, whatever the word, prosecution, is a matter of tremendous seriousness. Yes. I understand that part. But the question is how did the defendant aid and abet, or what conspiracy was he in, rather than encouraging and cheering on. Yes, exactly. Yes. Well, so I'm going to be relying on the Haberstam factors, the Haberstam factors for aiding and abetting, and also for conspiracy. Let me begin with aiding and abetting. The defendant authored, you know, scripted, wrote articles and video polemics that called for the violent suppression, the word is doujian in Chinese, the torture, the word is jianhua in Chinese, and the public humiliation, the word is jiepi in Chinese, of Falun Gong practitioners. And he disseminated these materials on authoritative party platforms. So that's one part of what he did. Was there any conduct other than speech? I'm sorry? Was there any conduct that you contend constituted aiding and abetting other than speech? Well, so we're under the talk, I'm discussing the amount and the kind of assistance. And, yes, there were, yes, he, putting aside that his speech is non-expressive speech in the sense that, you know, the sun is shining, but rather do that. But putting that aside for the moment, yes, he created the China Anti-Cult Association Organization with others collaboratively for the sole purpose of subjecting Falun Gong, as it states in the bylaws, to doujian, which is violent suppression. These campaigns have been going on in China for years, since the founding of the Communist Party. You have the landlords, you have judges, you have Tiananmen Square, so on and so forth. He served on the two executive committees of that organization, and as such, he created the China Anti-Cult. Well, he suggested, he founded, he hosted on his website, his television website, and controlled the China Anti-Cult website also to ensure the subjection of Falun Gong to doujian, especially through torture. And as stated in the complaint, an abundance of materials on the China Anti-Cult website relate to torture. There are three types. One, calling for torture on an authoritative website, which I would argue is equivalent to an order. They explain why Falun Gong should be subjected to torture, because they're state enemies, they're demonic. I mean, the propaganda is very similar to the Holocaust propaganda. I actually did a study of that on a separate occasion. Would Holocaust propaganda be aiding and abetting? If you had Holocaust propaganda prior to a march on something in the streets of Charlottesville, would it be aiding and abetting? Yes, certainly. I would say that Goebbels and Julius Streich— I mean here, in the United States, if somebody— I'm sorry. If somebody in the United States had something that suggested there was, you know, Holocaust denial— Oh, oh, oh, I see what you're saying. Would that— No, no, no, because, no, no, no, because— Yeah, no, I understand what you're saying. No, so that's not the case here at all. So we're talking about a situation like the Holocaust, like Rwanda, like Bosnia, where the targets, the Falun Gong believers— and by the way, this also refers to Uyghurs and Tibetan Buddhists and so on, although they're not part of the case— they're being subjected to torture in camps across China at the same time. My question is whether the defendant provided substantial assistance. Yes, exactly. So I was just answering Judge Stack's question, which is that it's different because there's no— Jewish people are not in concentration camps in this country being subjected to torture. And so the argument is that there's an underlying crime, torture, that's going on in China, and that the defendant is aiding and abetting that crime through his speech acts, which amount to orders, because he's calling for— I think the difficulty is to say that because someone engages in speech, encouraging violence, does that make that person an aider and abetter in the torture? Well, so I think— You have law that says that. So we—well, I mean, the situation here is not that he encouraged, but that he called for on authoritative party platforms, which we have experts who can speak to this, amounts to—and have spoken to this. Herr Quinlan in her expert affidavit amounts to an order. Basically, he is ordering people to go outside the law and torture Falun Gong. I mean, if you say to me, leave the courtroom, that's different than— Is there an allegation in the complaint that he ordered people to commit— He called—what I'm saying is that the complaint alleges that he called for these practices, janghwa, which is torture, dojen, which is violent suppression, on authoritative party platforms, and that the— Is there authority for the proposition that calling for torture constitutes aiding and abetting? Yes. What statement? In other words, the expert affidavit of Herr Quinlan states categorically that his language, no differently than when Jiang Zemin calls for dojen or violent suppression or torture, that it amounts to an order, go outside the law and torture these people, go outside the law and violently suppress these people. That's the affidavit by Herr Quinlan. And I also think there's some common sense behind that, that if you have an authoritative government platform telling you to arrest and torture these people, I mean, it has a different force than if somebody in the street says, hey, I don't like you, or if you have a parade. I mean, one of the considerations that— You're over your time. You have some rebuttal time. Oh, I'm so sorry. I wanted you to—I mean, what about the second point, the prejudice point? Why did this case take so long? Isn't it, I guess, prejudicial to both sides, really, the delay? Well, so, yeah, the delay was unfortunate. And, I mean, the first amended complaint was filed because two of the plaintiffs were arrested, so I changed the plaintiffs. That was within a month or two. The second amended complaint was filed because of talisman, and talisman changed the pleading requirement for mens rea from knowledge to purpose. And so we filed the second amended complaint in 2011 or 12. And that would have ended it, but for Keoghle, because we had oral argument in March 2012. I thought it went pretty well. The judge asked, you know, very helpful questions. But then Keoghle was certified three days later, and the case was put on hold, and after the determination was made in Keoghle, which, of course, took twice as long, because first they were looking at conspiracy, and then they were looking at the entire ATS, you know, whether there should be an ATS or not and whether cases can be brought under the ATS. And so that took two years. And then it took at least a year and a half, if not two, to figure out what Keoghle meant. And, you know, intelligent people can disagree. I mean, we were arguing that the presumption went to cause of action. The defendants were arguing that it went to subject matter jurisdiction. The courts were in disagreement for a while until so. That's fine. Thank you. We'll hear from the other side, and then you can have your rebuttal. Thank you very much, sir. Good morning, Your Honors. May it please the Court. My name is Bruce Rosen. I represent Mr. Chow. I'm afraid the acoustics in this room are not quite as ñ well, they're not even as good as those upstairs in the 17th floor. It is a beautiful room. I've been in many courts, Your Honor, and this is sort of a grandiosity that you don't see in many courtrooms around the country. At any rate ñ It's so important that we hear you. Yes. I would make ñ I want to get to the two points that Your Honor made. But there's several layers to this case, as our briefs point out. One, we don't believe that at least this Court has established federal jurisdiction under the TVPA. And even if it were, we don't believe that it's aiding and abetting under the TVPA, as Judge Chatney said below. And third, we don't believe that the allegations in the complaint are torture under the TVPA, as Judge Chatney said below. And fourth, the allegations are not specific enough under Twombly and Iqbal. And even if that were so, we believe it ñ As a matter of ñ do we have to decide those questions in order? Supposing ñ and I should assure your adversaries I'm not saying this is what I think. But supposing we would agree with your position that the amended complaint third, wherever we are, does not adequately state an alleged cause of action for either aiding and abetting or conspiracy. Can we go to ñ do we have the power to address that issue first or must we go in order? I don't believe this Court needs to go in order. I think you could simply affirm Judge Chatney's decision. You don't need to go in that order. But what I specifically want to get into is what you mentioned, Judge Sack, about incitement. Because really what we're talking about is incitement. And supposedly, Mr. Zhao, and we may ñ My question was if we agree with you, is that the end of the matter? Yes. Because sometimes there are cases, particularly when it's a question of constitutional jurisdiction, where we're not allowed to decide something if it is not properly before us, even if we agree with you, you understand? And that's what I want to make sure I understand. I don't believe that there's any one of those issues that would prohibit this Court from simply affirming Judge Chatney below. In ñ we are ñ made a First Amendment argument here, and this has been going on for 15 years, as Your Honors know. It's not really the First Amendment in the sense that the First Amendment applies in China, and everybody knows that.  My question is that would the things that he said be termed incitement under U.S. law? And I think the answer to that is very clearly no. And I don't see ñ and what I was trying to get at in the brief was to say if it's no, how can you make it ñ If it was incitement, then could it be aiding and abetting? If you ñ by ñ in the sense that it would have to reach the point where it really was aiding and abetting. It was like in the International Criminal Court in Rwanda when one of the tribes said, bring your machetes and go kill people. That's not what really happened here. And the language is much more ñ it's much more tame. And those three words, which, with all due respect to counsel, this is not 1966. This is not the Cultural Revolution. While those words have been used in Marxist ñ Which words? Dujang, Shlupi, the words that are all throughout the ñ every brief that's ever been written here as called polemics or it's called cultural invective. The argument is the defendant is alleged to have commanded people to go and commit torture. That's exactly true, Judge Chin. And why isn't that sufficient? Because there's no connection. There's no link. The command is based upon ñ and it's ñ honestly, if there was such a link, he would then be linked to the policies of China. And this case should be dismissed on other grounds, including it's a political question or ñ this is a ñ walks a fine line and says, well, this is the Chinese Communist Party. There are nine parties in China, and they're not the government. That's not really the case. The president of China at the time was the president of the Communist Party. His pronouncements ñ It's not something we have to reach. It's not something you have to reach. But if you were to decide that, in fact, that there was that link, that he was in command because of his position in the Communist Party, it might be something the court would have to reach. But I don't believe this court has to reach that. This is a ñ this is really a case about allegations of incitement. And if you look closely at the allegations, they don't get specific enough to be incitement under U.S. law, certainly. And even if ñ look closely at saying those particular words. Now, there's a documentary. Mr. Zhao said very early on, he did submit an affidavit in 2004, and he said, I had nothing to do with that. What I did was I questioned a bunch of people, put it on the shelf at my studio, and I left it there. I didn't think there was enough for anything. But after ñ but Mr. Zhao is very active in anti-superstition and believes that this movement of the Falun Gong is filled with superstition. And so he was opposed to it and felt that it was causing social unrest. But he left it at that. He put it on his shelf. The Chinese government took that, made it into that documentary that appeared. Now, that documentary is available on YouTube. I believe we sent it into the court, copies of it. And there's a translation that goes along with it. And it's nothing other than what you see on any station at any time on U.S. television. Basically, I don't even think it's defamatory because it's probably the things that are in there are either true or their opinion. So this is what we're talking about. The words, those magic words, appear in the last paragraph or so of that long presentation. And it's just going back and forth about, hey, Mr. Li Hongzhi is a charlatan. That's what this is about. He's a charlatan, and you people in Falun Gong are being taken for a ride. And that, in the United States, of course, would be free speech. How that becomes an advocacy for torture, I don't know. But you use these particular words. The plaintiff, Appellant, is saying that these words mean a lot more than what they are. But as Justice Chatney said, there's no real connection between what this cog in the Chinese Communist Party, assuming that he even is, there's no connection between that cog and what actually happened. To believe that Mr. Zhao, that all of these security people and the police who arrested and persecuted the Falun Gong in China actually had to go to the website and say, now, what is Mr. Zhao telling me to do now? Or when he wrote something in the People's Daily, you know, when he used that word, ah, he used that word, I have to torture this morning. This is my job. It's far-fetched. And I understand that the Falun Gong are aggrieved. And I can't take a position on that aggrievement. All I can tell you is that Mr. Zhao had nothing to do with actual torture, did not know the torturers. There's no allegation he knew the torturers. And there's no connection. There's no aiding and abetting. Thank you. We'll hear the rebuttal. Thank you. Just for one second to go back to the initial question, was there, is there legal authority for aiding and abetting? And, yes, my answer to that was, yes, under the Haberstam factor. No, I wasn't asking whether there's legal authority for aiding and abetting. I know you have the Haberstam case. It was more whether encouraging torture is aiding and abetting. Is there authority for that? Well, so just because I only have a few minutes, the, so what I did was I went through the five factors of Haberstam, looking at the underlying torture, the nature and kind of the assistance, looking at the organizations he created, looking at his calling for torture, so on and so forth. And so, too, with conspiracy, that, in other words, I based the argument that one could infer an agreement to further, an agreement to subject Fallon Gong. Is there an allegation that the defendant knew the torturers? Yes. He, yes.  I mean, he. Is that in the complaint? It's in the complaint because he created the China Anti-Cult Association in order to subject Fallon Gong to doujian, which means violent suppression, and on the website and in his articles he calls for janwa. Janwa is the Chinese word for forced conversion through torture. It means both physical and mental torture. He calls for it in his articles and on. I'm not answering my question. I'm sorry. Is there an allegation that he knew the torturers? Oh, I'm so sorry. I didn't hear that, that he knew the torturers. The allegations regarding his connection to the torturers is that the activities were mutually reinforcing, that you have the sword and the pen, and that the way that operates in China is that you need the pen before you have the sword. So you have to have the propaganda that turns China against the target group and also orders and instructs that they be subjected to the torture, and then the security engages in the torture. So they're mutually reinforcing. There's definitely indirect contact. I don't know that Goebbels ever met Hitler or any of the SS, but there's definitely allegations of indirect contact in that the CACA held annual conferences every year, and the public security were there at each and every one of those conferences, whether Zhao attended or not. These are all his collaborators there at the conferences mingling with security, and at these conferences they gave out the torture manuals telling the security how to torture Falun Gong based on their personalities. There's type A, type B, type C, and depending on which type you encounter, this is how you torture them. And those torture manuals, according to the complaint, were also provided by CACA to camps across China. I just wanted to conclude by saying that the defendant's counter allegations are not unimportant. It's just that they're not relevant at this phase. They would be relevant if he were to file an answer. They would be relevant if we went to trial. But his counter narratives simply ignore the defendant's role as an agenda-setting propaganda high up in the party and all of the organizations he created and the torturous acts that he ordered. Thank you. Thank you. We'll reserve decision.